**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| UNITY ENVIROTECH OF ILLINOIS, LLC, | Case No. 21-10563 (CSS) |
| Debtor. | |
| | **Bid Procedures Hearing Date:  TBD – Expedited Consideration Requested** |
| | **Bid Procedures Objections Due: TBD – Expedited Consideration Requested** |
| | **Sale Hearing Date: TBD** <br> **Sale Objections Due: TBD** |

**MOTION OF DAVID W. CARICKHOFF, CHAPTER 7 TRUSTEE,**
**FOR ENTRY OF ORDERS: (I) (A) ESTABLISHING BID PROCEDURES FOR THE**
**SALE OF THE DEBTOR'S ASSETS RELATED TO ITS FACILITY;**
**(B) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE AND**
**APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (C)**
**ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES; AND (D) GRANTING RELATED RELIEF AND (II) (A) APPROVING THE**
**PROPOSED SALE; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES;**
**AND (C) GRANTING RELATED RELIEF**

David W. Carickhoff, the duly appointed chapter 7 trustee (the "Trustee") of the

estate (the "Estate") of Unity Envirotech of Illinois, LLC (the "Debtor"), hereby files this motion

(the "Motion") under sections 105(a), 363 and 365 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules")

for entry of an order substantially in the form annexed hereto as **Exhibit A** (the "Bid Procedures

Order"): (i) approving the proposed bidding procedures (the "Bid Procedures")[1]; (ii) scheduling a

hearing (the "Sale Hearing") to approve a sale (the "Sale") of the Purchased Assets (as defined

below) and approving the form and manner of notice thereof; (iii) establishing procedures for the

assumption and assignment of executory contracts and unexpired leases; and (iv) granting related

relief (the "Bid Procedures Relief").

      The Trustee also hereby moves the Court, pursuant to Bankruptcy Code sections

105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, for entry of an  Order (the "Sale

Order"):[2] (i) authorizing the sale of the Purchased Assets free and clear of all liens (as such term

is defined in section 101(37) of the Bankruptcy Code, "Liens"); (ii) approving the assumption and

assignment of executory contracts and/or unexpired leases to the Successful Bidder (as defined

below); and (iii) granting related relief (collectively, the "Sale Relief").[3]  In support of this Motion,

the Trustee respectfully represents as follows:

## JURISDICTION

      1.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N),

and (O).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      2.    The statutory predicates for the relief requested herein are sections 105(a),

363 and 365 of the Bankruptcy Code, as complimented by Bankruptcy Rules 2002, 6004, and

6006, and Local Rule 6004-1.

---

[1] A copy of the Bid Procedures is annexed as **Exhibit 1** to the Bid Procedures Order.

[2] The Trustee anticipates filing (i) a proposed form of Sale Order and (ii) a form asset purchase agreement (the "Form APA") as soon as reasonably practicable.

[3] This Motion contains the Trustee's request for approval of both the Bid Procedures Relief and the Sale Relief.  The Trustee is seeking approval of the Bid Procedures Relief at the initial hearing to be conducted on this Motion; the Sale Relief is requested to be considered at the Sale Hearing.

## BACKGROUND

3.      On March 12, 2021 (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

4.      On March 14, 2021, the Trustee was appointed as interim trustee of the Debtor's estate pursuant to Bankruptcy Code section 701(a).[4]

5.      Prior to the Petition Date, the Debtor manufactured granulated ammonium sulfate fertilizer products for agricultural use and operated a facility located in Henry, Illinois (the "<u>Facility</u>") under the name Centilion Fertilizer Company.

6.      Silverpeak Credit Partners, LP (the "<u>Silverpeak</u>"), as agent for the pre-petition senior secured lenders, asserts a first-priority blanket lien on all of the Purchased Assets (as defined below).[5]

## ASSETS TO BE SOLD

7.      By this Motion, the Trustee seeks, *inter alia*, authority to sell all of the Debtor's right, title and interest in and to the assets related to the Debtor's Facility (collectively, the "<u>Purchased Assets</u>").  The Purchased Assets include, among other things, (i) the Debtor's real property in Henry, Illinois (the "<u>Real Property</u>") and (ii) the personal property, including machinery, equipment and inventory located at or on the Real Property.  The Real Property is owned by the Debtor 100% in fee simple and consists of three parcels of land of approximately 236 total acres, with the street address of 1557 County Road, 1400 North, Henry, Illinois 61537. The Real Property includes the Facility as well as adjacent farmland.[6]

---

[4] The Trustee also has been appointed interim trustee in the related case of *In re Henry Fertilizer Holdings, LLC*, No. 21-10562 (CSS).

[5] The Trustee does not concede the extent, validity or priority of any liens asserted on the Purchased Assets (as defined below) and reserves all rights.

[6] The adjacent farmland is subject to a farm lease, with the Debtor as lessor.

8.      Prior to the Petition Date, in March 2020, the Debtor retained Piper Sandler & Co. ("Piper Sandler") as its financial advisor and investment banker to explore certain transactions for the Debtor, including a potential sale of the Purchased Assets.  Prior to the Petition Date, Piper Sandler ran a sale and marketing process for the Purchased Assets and identified certain parties with an interest in potentially purchasing the Purchased Assets.  In particular, Piper Sandler established a virtual data room and reached out to between 50 and 60 parties (both financial and strategic) that it thought might have an interest in the Purchased Assets. Approximately 20 non-disclosure agreements were executed by potentially interested parties, five parties performed site visits and four parties executed non-binding letters of intent.

9.      Since his appointment, the Trustee has been working with Piper Sandler to continue the sale and marketing process for the Purchased Assets.

10.     Given the marketing process that has occurred to date and the limited liquidity available to the Estate to fund ongoing administrative expenses associated with maintaining the Purchased Assets, the Trustee has determined that it is in the best interest of the Debtor's Estate to run a formal sale process for the Purchased Assets at this time.  The Trustee seeks to close on a sale of the Purchased Assets prior to the end of May in order to avoid ongoing administrative expenses associated with maintaining the Purchased Assets.

## RELIEF REQUESTED

11.     By this Motion, the Trustee seeks entry of the Bid Procedures Order: (i) approving the Bid Procedures to be used to solicit the highest or otherwise best offer(s) for the Purchased Assets; (ii) approving certain notice procedures with respect to the Sale; (iii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases; and (iv) scheduling the Sale Hearing.

12.     By this Motion, the Trustee also seeks approval of the successful bid(s) after completion of the bidding process.  The Motion seeks the customary relief for sales of a debtor's assets free and clear of Liens.

13.     Following completion of the sale process, the Trustee intends to request entry of a Sale Order: (a) approving the sale of the Purchased Assets free and clear of all Liens (with such Liens attaching to the proceeds of the sale in the same order of priority and to the same extent as such Liens were valid, perfected and enforceable prior to entry of the Sale Order), to the Successful Bidder and (b) authorizing the Trustee to assume and assign any executory contracts and/or unexpired leases to the Successful Bidder as selected by the Successful Bidder.

A.     **The Proposed Bid Procedures**

14.     The Trustee seeks approval of the Bid Procedures, which have been designed to be flexible and open to all bids for any and all of the Purchased Assets and to facilitate a robust sales process, thereby generating the greatest value for the Estate under the circumstances.

15.     The Trustee proposes the following timeline for solicitation of bids, the Sale and Sale Hearing.

   i.   Preliminary Bid Deadline:  April 30, 2021 at 5:00 p.m. (ET).

   ii.  Clarification of Bids: April 30, 2021 – May 5, 2021

   iii. Final Bid Deadline:  May 5, 2021 at 5:00 p.m. (ET)

   iv.  Selection of Successful Bidder:  On or before May 6, 2021 at 5:00 p.m. (ET)

   v.   Proposed Sale Objection Deadline: April 30, 2021 at 4:00 p.m. (ET).

   vi.  Proposed Sale Hearing: May 7, 2021, or such other time that is convenient to the Court.

16. **Interested Bidders must submit Bids by the Preliminary Bid Deadline for a Bid to be deemed a Qualified Bid. The Trustee does not intend to conduct a live auction for the Purchased Assets after the Preliminary Bid Deadline. Both prior to and after the Preliminary Bid Deadline (but in all events prior to the Final Bid Deadline), the Trustee may enter into discussions with any or all of the Qualified Bidders to determine clarifications of the Qualified Bids and to negotiate the terms of the proposed sale and the proposed Asset Purchase Agreement. Qualified Bidders who timely submitted a Qualified Bid by the Preliminary Bid Deadline, may submit improved bids by the Final Bid Deadline. Unless otherwise agreed by the Trustee, Qualified Bidders who timely submit a Qualified Bid by the Preliminary Bid Deadline but do not submit improved bids by the Final Bid Deadline will remain bound by the terms of the original bid submitted by the Preliminary Bid Deadline.**

17. The Bid Procedures describe, among other things, the requirements and manner in which bidders and bids become "qualified," the coordination of due diligence efforts, the receipt and negotiation of bids received, and the selection and approval of any ultimately successful bidders (the "Bidding Process").

18. Set forth below is a summary of certain key terms of the Bid Procedures as required under Local Rule 6004-1(c)(i):[7]

      i. Due Diligence:  To participate in the bidding process and receive access to due diligence, a party must submit to the Trustee an executed non-disclosure agreement (an "NDA").  The Trustee will afford any interested bidder that has executed an NDA the time and opportunity to conduct reasonable due diligence under the time constraints and circumstances; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Preliminary Bid Deadline.  The Trustee reserves the right to withhold any Diligence Materials that the Trustee, in

---

[7] This is meant to be summary in nature only.  In the event of any inconsistencies between this summary and the Bid Procedures, the terms of the Bid Procedures shall control.  Capitalized terms used in this summary which are not otherwise defined in the Motion shall have the meanings ascribed to them in the Bid Procedures.

consultation with his advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an interested bidder. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person. Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Trustee or his professionals, representatives or agents for the completeness or accuracy of any information provided to them by the Trustee or his professionals, representatives or agents.

ii.   Participation and Bid Requirements: To ensure that only bidders with a serious interest in purchasing some or all of the Purchased Assets participate in the Bidding Process, the Bid Procedures provide for certain minimal requirements for potential bidder to become a "Qualified Bidder". These requirements, which are set forth more fully in the Bid Procedures, include (i) execution of an NDA before participating in the due diligence process; (ii) providing the Trustee with certain corporate information regarding the bidder and certain financial assurances as to such bidder's ability to close a transaction for the Purchased Assets; (iii) submission of a binding proposal regarding the Purchased Assets and the consideration to be paid, which proposal shall be based on the Form APA (and shall include a redline noting any changes to the Form APA) and shall contain no contingencies, other than entry of the Sale Order approving such APA; (iv) a certification that the bidder has not colluded with other bidders; and (v) a good faith deposit in the amount of ten percent (10%) of the proposed purchase price.

iii.  Assets to be Purchased: A Bid may be for all or a portion of the Purchased Assets and must identify with particularity any and all of the Purchased Assets that the Bidder proposes to purchase. In the case of bid for less than all of the Purchased Assets, the Asset Purchase Agreement must allocate the purchase price per lot of Purchased Assets identified.

iv.   Evaluation of Qualified Bids:. The Trustee reserves the right to determine the value of any Qualified Bid (either by itself or in connection with one or more other Qualified Bid), and which Qualified Bid constitutes the highest, best and otherwise financially superior offer for the Purchased Assets. If one or more Qualified Bid is received by the Preliminary Bid Deadline, the Trustee and his advisors shall review and evaluate each Qualified Bid, which review and evaluation may include clarifying the terms of each Qualified Bid and negotiating the terms of an acceptable purchase agreement during the bid clarification period. Qualified Bidders who timely submit a Qualified Bid by the Preliminary Bid Deadline may submit an improved bid by the Final Bid Deadline. Qualified Bidders who timely submit a bid by the Preliminary Bid Deadline but do not submit improved bids by the Final Bid Deadline will remain bound by the terms of the original bid submitted by the Preliminary Bid Deadline.

v. <u>Selection of Successful Bid(s)</u>: If one or more Qualified Bid is timely received, the Trustee and his advisors shall (i) identify and certify the bid(s) that constitutes the highest and best offer for the Purchased Assets (such bid, the "<u>Successful Bid</u>" and such person submitted such bid the "<u>Successful Bidder</u>"), and (ii) identify and may, in their discretion, certify the bid that constitutes the next highest or best offer for the Purchased Assets (such bid the "<u>Backup Bid</u>" and such person submitting such bid the "<u>Backup Bidder</u>"), and, in each case, so notify the Successful Bidder and Backup Bidder.  The determination of which Qualified Bid is to be selected as the Successful Bid will take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the Estate and may include, but are not limited to, the following:  (a) the amount of the consideration and the resulting recovery to holders of general unsecured claims; (b) the number, type and nature of any changes to the Form APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Estate of such modifications or delay; (d) the total consideration to be received by the Estate, including the assumption of any liabilities of the Estate; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to Estate.

vi. "<u>As Is, Where Is</u>":  Any sale of the Purchased Assets shall be on an "as is, where is" basis and without representations of any kind, nature or description by the Trustee, his agents, the Estate or the Estate's agents, except to the extent set forth in the operative purchase agreement of a Successful Bidder.  By submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets to which their Qualified Bid applies, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the purchase agreement of a Successful Bidder.

vii. <u>Sale Free and Clear of Liens</u>:  Except as otherwise provided in the purchase agreement of a Successful Bidder, all of the Debtor's right, title and interest in and to the Purchased Assets proposed to be sold shall be sold free and clear of any and all Liens (as defined in section 101(37) of the Bankruptcy Code) against the Purchased Assets to the maximum extent permitted by Section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the Purchased Assets subject to the Sale with the same validity and priority as such Liens applied against such Purchased Assets.

      viii.  <u>Modification of Bid and Auction Procedures</u>: Except as otherwise provided in the Bid Procedures or the Bid Procedures Order the Trustee reserves the right as he may reasonably determine to be in the best interest of the Estate to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid constitutes the highest or best proposal and which constitutes the next highest or best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtor and its Estate; (e) waive non-compliance with any of the terms and conditions set forth in the Bid Procedures as he determines to be in the best interests of the Estate, creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth in the Bid Procedures; (h) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtors' bankruptcy cases, without further notice to creditors or other parties in interest; and (i) implement additional procedural rules that the Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties; provided, however, that any modification or additions to the Bid Procedures shall not be materially inconsistent with the Bid Procedures Order or any other order of the Court, the Bankruptcy Code, or the Bankruptcy Rules, and shall be disclosed to each Qualified Bidder.

19.    In addition to the foregoing summary, the Trustee makes the following disclosures pursuant to Local Rule 6004-1(b)(iv): [8]

      i.  <u>Local Rule 6004-1(b)(iv)(A)</u>. To the extent a proposed purchaser is an insider (within the meaning of section 101(31) of the Bankruptcy Code), the Trustee will make the necessary disclosures to the Court and take measures to ensure the fairness of the sale process and the proposed transaction.

      ii.  <u>Local Rule 6004-1(b)(iv)(C)</u>. The Bid Procedures Relief does not include the granting of any release in favor of any entity.

      iii.  <u>Local Rule 6004-1(b)(iv)(D)</u>. As set forth above, the Trustee proposes to solicit competing offers for the Purchased Assets through a sealed bid process and does not intend to hold a public auction for the Purchased Assets. There is no agreement not to solicit competing offers for the Purchased Assets or to otherwise limit shopping of the Purchased Assets.

---

[8] These terms are subject to change based upon negotiations with interested bidders.

iv.  <u>Local Rule 6004-1(b)(iv)(F)</u>.  The Trustee is requiring Qualified Bids to include a ten percent (10%) good faith deposit.

v.  <u>Local Rule 6004-1(b)(iv)(H)</u>.  The Trustee is not seeking to release any sale proceeds unless otherwise authorized by the Court in an Order (which may include cash collateral order entered in the case).

vi.  <u>Local Rule 6004-1(b)(iv)(I)</u>.  The Trustee is not seeking to have the Sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

vii.  <u>Local Rule 6004-1(b)(iv)(J)</u>.  The Trustee will likely retain those of the Debtors' books and records necessary to enable him to administer the Estate.

viii.  <u>Local Rule 6004-1(b)(iv)(K)</u>.  The Trustee is not seeking to sell avoidance actions.

ix.  <u>Local Rule 6004-1(b)(iv)(L)</u>.  The Trustee is seeking to sell the Purchased Assets free and clear of successor liability claims.

x.  <u>Local Rule 6004-1(b)(iv)(M)</u>.  The Trustee is seeking to sell the Purchased Assets free and clear of all Liens to the fullest extent permitted by Section 363 of the Bankruptcy Code. The Trustee is aware that a portion of the Real Property is subject to a farm lease with the Debtor as lessor.  The Trustee anticipates addressing issues related to the lease in connection with any successful bid for the Real Property.

xi.  <u>Local Rule 6004-1(b)(iv)(N)</u>.  As set forth in the Bidding Procedures, Qualified Bidders (as defined below) holding allowed secured claims against the Estate with respect to liens upon the Purchased Assets may make one or more credit bids of some or all of their allowed secured claims, subject to any order of the Court or any subordination, inter-creditor or similar agreement.

xii.  <u>Local Rule 6004-1(b)(iv)(O)</u>. The Trustee is seeking relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) for any sale.

**B.**    **The Proposed Sale Notice Procedures**

20.    The Trustee requests that the Court approve the proposed Sale notice procedures set forth below.

*i.    Notice of Sale, Auction, and Sale Hearing*

21.    Within three (3) business days following the entry of the Bid Procedures Order or as soon as reasonably practicable thereafter (the "Mailing Date"), the Trustee will serve a sale notice in the form annexed to the Bid Procedures Order as **Exhibit 2** (the "Sale Notice"), the Bid Procedures Order, and the Bid Procedures by electronic mail, first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to all or part of the Purchased Assets; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Purchased Assets; (iii) the Office of the United States Trustee for the District of Delaware; (iv) Counsel to Silverpeak; and (vi) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rules 2002-1 and 9013-1(b), as may be limited by any Court Order.   To the extent email addresses are available, such parties will be served by email.

22.    In addition, on the Mailing Date, the Trustee shall serve the Sale Notice by first-class mail, postage prepaid or, for those parties who have consented to receive notice by the ECF system, by ECF, upon: (i) the United States Attorney's offices for the District of Delaware; (ii) the United States Environmental Protection Agency; (iii) the Illinois Environmental Protection Agency; and (iv) the Internal Revenue Service.

23.    The Trustee requests that such notice be deemed sufficient and proper notice of the Sale with respect to known interested parties.

     *ii.*     *Date, Time, and Place of Sale Hearing*

24.    As set forth above, the Trustee requests that the Sale Hearing be conducted by the Court on May 7, 2021, or such other date as the Court is available and may, in accordance with the Bid Procedures Order, be adjourned or rescheduled without notice.  At the Sale Hearing, the Trustee will seek Court approval any Successful Bid and Backup Bid.  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing.  In the event that a Successful Bidder cannot or refuses to consummate a Sale because of the breach or failure on the part of such Successful Bidder, the applicable Backup Bidder will be deemed the new Successful Bidder and the Trustee shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Court.

     *iii.*     *Sale Objection Deadline*

25.    Any and all objections, if any, to the Sale (a "Sale Objection"), must be filed by April 30, 2021 (or such other date ordered by the Court, the "Sale Objection Deadline") and served on: (a) the Trustee, David W. Carickhoff (dcarickhoff@archerlaw.com), Archer & Greiner, P.C., 300 Delaware Ave., Ste. 1100, Wilmington, DE 19801; (b) counsel for the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: Alan M. Root, Esq.  (aroot@archerlaw.com);  (c)  counsel  for  Silverpeak,  Attn:  Benjamin  Mintz (benjamin.mintz@arnoldporter.com); and (d) Office of the United States Trustee, c/o Linda J. Casey (linda.casey@usdoj.gov), 844 King St., Ste. 2207, Wilmington, DE 19801;  (collectively (a)-(d), the "Objection Recipients").

26.    Any party failing to timely file an objection to any Sale will be forever barred from objecting and will be deemed to have consented to any Sale, including the transfer of the Debtor's

right, title and interest in, to and under the Purchased Assets, free and clear of any and all liens, claims, encumbrances and other interests in accordance with a definitive agreement for any Sale.

**C.     The Proposed Notice of Assumption and Assignment of Contracts
and Cure Amounts**

27.     As part of the Sale, the Trustee seeks authority to assume and assign certain executory contracts and/or unexpired leases (the "Assigned Contracts") as may be requested by a Successful Bidder pursuant to Section 365 of the Bankruptcy Code.  To the extent any Assigned Contract is determined not to be an executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code, the Trustee seeks authority to transfer all of the Debtors' rights and obligations under such Assigned Contract and the associated Purchased Assets to the applicable Successful Bidder, pursuant to Section 363 of the Bankruptcy Code.

28.     With respect to any Assigned Contract, no later than 30 days after the Sale Hearing, the Trustee will file with the Court and serve on each party to an Assigned Contract a notice substantially in the form annexed to the Bid Procedures Order as **Exhibit 3** (the "Cure Notice") identifying each Assigned Contract.  The Cure Notice will state (i) the cure amount that the Trustee believes is necessary to assume such contract or lease pursuant to Bankruptcy Code section 365 (the "Cure Amount"), (ii) notify each party that such party's contract may be transferred assumed and assigned to the Successful Bidder, and (iii) state the deadline ("Cure/Assumption Objection Deadline") by which the non-Debtor party must file an objection to the Cure Amount (a "Cure Objection") or to the assumption and to the assumption and assignment of any Assigned Contract to the Successful Bidder (including any objection based on lack of adequate assurance of performance of the contract by the Successful Bidder) (an "Assumption and Assignment Objection").

29.     The Trustee requests that the Court set the Cure/Assumption Objection Deadline as 4:00 p.m. (Eastern) 14 (fourteen) days after the filing and service of the Cure Notice.   Any objections must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; and (iii) state with specificity the legal and factual basis for such objection. Any objections not resolved between the parties shall be set for a hearing as fixed by the Court.

30.     Any counterparty to any Assigned Contract who does not file a Cure Objection by the Cure/Assumption Objection Deadline, will be barred from objecting to the Cure Amount or asserting or claiming any Cure Amount (other than the Cure Amount listed on the Cure Notice) against the Trustee or any Successful Bidder.

31.     Moreover, any counterparty to an Assigned Contract who does not file an Assumption and Assignment Objection by the Cure/Assumption Objection Deadline will be deemed to have consented to the assumption and assignment of its Assigned Contract to the Successful Bidder and will be barred from objecting to such assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds.

## BASIS FOR RELIEF REQUESTED

### A.     Entry of the Bid Procedures Order is Necessary and Appropriate Under the Facts and Circumstances of This Case

32.     After notice and a hearing, a trustee may sell assets outside the ordinary course of business.  11 U.S.C. § 363(b).  Generally, to obtain approval of a proposed sale of assets under section 363(b), a trustee should demonstrate that the proffered purchase price is the highest or best offer under the circumstances of the case.  See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res., 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that

the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

33.    The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside the ordinary course of business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest or best recovery for a debtor's estate. The proposed Bid Procedures and the opportunity for competitive bidding embodied therein are both reasonable and designed to maximize the value received for the Purchased Assets by facilitating a competitive bidding process in which all potential and qualified bidders are encouraged to participate and submit competing bids.

34.    The Trustee desires to receive the greatest value possible for the Purchased Assets. The Bid Procedures were developed so as to be consistent with the Trustee's need to expedite the sale process but with the object of promoting active bidding that will result in the highest and/or best offer possible

35.    In the event one or more Qualified Bids are timely received, the Trustee may select the highest and/or best Qualified Bid(s) for some or all of the Purchased Assets.  **ALL BIDS SELECTED BY THE TRUSTEE SHALL BE SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT.**

36.    Given the current circumstances of this case, the Trustee believes that implementation of a prompt sale process is the best way to maximize the value of the Purchased Assets and otherwise avoid accrual of ongoing administrative expenses associated with maintaining the Purchased Assets.  Prompt entry of the Bid Procedures Order will permit the sale process contemplated by the Bid Procedures to begin as expeditiously as possible.

**B.**     **Notice of the Proposed Sale is Reasonable Under the Circumstances**

37.     In order to receive the highest and/or best price for the Purchased Assets under the circumstances, the Trustee is seeking to conduct the Sale and hold the Sale Hearing on an accelerated track.  In order to yield the greatest possible return for the benefit of creditors and to limit administrative expenses associated with maintaining the Purchased Assets, the Trustee believes that an expedited sale process is warranted and necessary.

38.     The Trustee has established a detailed and comprehensive process for providing notice to all interested parties, as set forth above.  The Trustee submits that the notice to be provided to parties in interest is reasonable and appropriate and will be adequate to ensure that the value of the Purchased Assets has been tested in the marketplace.

**C.**     **The Proposed Sale of the Purchased Assets Should be Approved as a Product Of the Trustee's Exercise of Sound and Reasonable Business Judgment**

39.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Section 105(a) of the Bankruptcy Code provides in relevant part: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

40.     This Court should approve the proposed sale if the Trustee demonstrates a sound business reason or justification in support thereof.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 179 (D. Del. 1991); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (section 363 sale should be approved if "the proposed sale is fair and equitable, ... a good business reason [exists] for completing the sale and the transaction is in good faith"); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983).

41.    Here, the proposed sale procedures and proposed sale of assets easily meet the "sound business reason" test and it is clear the proposed sale is necessary to preserve the value of the Purchased Assets.  First, the fairness and reasonableness of the consideration to be paid for the Purchased Assets will be demonstrated by continued exposure to the marketplace via the sale process proposed herein, on notice to potential purchasers, creditors, and other parties in interest. Any proposed purchase agreement(s) will be the product of good faith, arm's length negotiations between the Trustee and the highest and/or best bidder with respect to the price and other terms of the sale of the Purchased Assets.  In short, the Trustee believes that a prompt sale of the Purchased Assets to any Successful Bidder presents the best opportunity to realize the maximum value of the assets.

**D.    The Sale of the Purchased Assets Should be Approved Free And Clear Of Liens Pursuant to Section 363(f) Of The Bankruptcy Code**

42.    Pursuant to section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell and transfer the Purchased Assets free and clear of all Liens, with such Liens to attach to the proceeds of the sale in the same order of priority, and to the same extent as such Liens were valid, perfected, and/or enforceable immediately prior to the sale.  Section 363(f) of the Bankruptcy Code is written in the disjunctive and provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or

> (5)     such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

43.     A sale free and clear of Liens is necessary to maximize the value of the Purchased Assets.  A sale subject to Liens would result in a lower purchase price and be of substantially less benefit to the Estate.   A sale free and clear of Liens is particularly appropriate under the circumstances because any Lien that exists immediately prior to the closing of any sale will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Trustee or any party in interest.   Moreover, any holder of a Lien that receives notice of the proposed sale and which fails to object should be deemed to consent to the proposed sale, thereby complying with section 363(f)(2) of the Bankruptcy Code.   Thus, the proposed sale(s) satisfies section 363(f) of the Bankruptcy Code.

**E.      The Court Should Approve the Transfer, Assumption and Assignment of the Assigned Contracts**

44.     Under section 365 of the Bankruptcy Code, a trustee may assume, reject, or assume and assign executory contracts and unexpired leases.  In accordance with section 365(a), a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."   11 U.S.C. § 365(a).   The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection.   See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).   The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate."   Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

45.     Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for a trustee

to assume an executory contract or unexpired lease.  This subsection provides:

> (b) (1)      If there has been a default in an executory
> contract or unexpired lease of the debtor, the trustee may not assume
> such contract or lease unless, at the time of assumption of such
> contract or lease, the trustee -
>
> > (A)      cures, or provides adequate assurance that the
> > trustee will promptly cure, such default;
> >
> > (B)      compensates, or provides adequate assurance
> > that the trustee will promptly compensate, a party other than
> > the debtor to such contract or lease, for any actual pecuniary
> > loss to such party resulting from such default; and
> >
> > (C)      provides adequate assurance of future
> > performance under such contract or lease.

11 U.S.C. § 365(b)(1).

46.     With respect to assignment of an executory contract or unexpired lease, section

365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of
> the debtor only if --
>
> > (A)      the trustee assumes such contract or lease in
> > accordance with the provisions of this section; and
> >
> > (B)      adequate assurance of future performance by
> > the assignee of such contract or lease is provided, whether or
> > not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

47.     The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical pragmatic construction."  EBG

Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139

B.R. 585, 593 (S.D.N.Y. 1992).  Adequate assurance does not mean absolute assurance or a

guarantee that the assignee will thrive and make all payments required under the subject contract. See In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D. N.Y. 1985).

48.     Among other things, adequate assurance may be provided by demonstrating the proposed assignee's financial health and experience in managing the type of enterprise or property assigned.  See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

49.     Here, section 365 of the Bankruptcy Code is satisfied and permits the assumption and assignment of the Assigned Contracts to any Successful Bidder.  All Cure Amounts will be paid either by: (i) the Successful Bidder or (ii) the Estate, from sale proceeds, as applicable.  Thus, no Cure Amount for an Assigned Contract will go unsatisfied.  Moreover, the Successful Bidder will provide adequate assurance of future performance.

50.     To the extent any Assigned Contract is determined not to be an executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code, the Trustee seeks authority to transfer all of the Debtor's rights and obligations under such Assigned Contract to the Successful Bidder, pursuant to Section 363 of the Bankruptcy Code.  As this Court has held, section 363 of the Bankruptcy Code authorizes the transfer of a debtor's rights and obligations under a non-executory contract to a buyer in connection with a 363 sale.  See DB Structured Products, Inc. v. American Home Mortg. Holdings, Inc. (In re American Home Mortg. Holdings, Inc.), 402 B.R. 87, 94 (Bankr. D. Del 2009).

**F.    The Automatic Fourteen Day Stay Under Bankruptcy Rules 6004(h) and 6006(d) Should be Waived**

51.    Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.  Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of executory contracts or unexpired leases are automatically stayed for fourteen days after entry of the order.

52.    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier on Bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. 10 *Collier on Bankruptcy* ¶ 6004.09 (15th ed. 1999).  Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  *Id.*

53.    To preserve and maximize the value of the Purchased Assets, and to avoid ongoing administrative expenses, the Trustee seeks to close the Sale immediately after all closing conditions have been met or waived.  Thus, waiver of any applicable stays afforded by the Bankruptcy Rules is appropriate under the facts and circumstances of this case.

## NOTICE

54.    Notice of this Motion, for purposes of the requested Bid Procedures Relief  has been provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) Counsel to Silverpeak; (iii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Purchased Assets; and (iv) all creditors with scheduled claims in excess of $20,000 and (v) any party who has requested notice in these cases

pursuant to Bankruptcy Rule 2002.  In light of the nature of the Bid Procedures Relief requested herein, the Trustee submits that no other or further notice is necessary or required prior to entry of the proposed Bid Procedures Order and proposed Bid Procedures.

## **NO PRIOR REQUEST**

55.    No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests entry of: (A) an order substantially in the form annexed as **Exhibit A** hereto (i) approving the Bid Procedures; (ii) approving certain notice procedures with respect to the proposed Sale; (iii) establishing procedures for the assumption and assignment of executory contracts and/or unexpired leases; (iv) scheduling the Sale Hearing; and (v) granting such other and further relief as is just and proper; and (B) an order (i) authorizing the sale of the Purchased Assets free and clear of all Liens; (ii) approving the assumption and assignment of executory contracts and/or unexpired leases to the Successful Bidder; and (iii) granting related relief.

Dated:  April 1, 2021

By: _/s/  Alan M. Root_
  Alan M. Root (#5427)
  Bryan J. Hall (# 6285)
  ARCHER & GREINER, P.C.
  300 Delaware Avenue, Suite 1100
  Wilmington, DE   19801
  Telephone:  302-777-4350
  Email:  aroot@archerlaw.com

  *Proposed Counsel for the Chapter 7 Trustee*

220693327v1